IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO 13-04219 ESL |
| LUIS ADRIAN ACEVEDO FIGUEROA | CHAPTER 13 |
| DEBTOR | |

**DEBTOR'S MOTION IN COMPLIANCE WIH *ORDER TO SHOW CAUSE*,
DOCKET NO. 99**

TO THE HONORABLE COURT:

**COMES NOW, LUIS ADRIAN ACEVEDO FIGUEROA**, the Debtor in the above captioned case, through the undersigned attorney, and very respectfully states and prays as follows:

**I.. INTRODUCTION**

**1.** On August 14, 2017, this Honorable Court issued an *Order to Show Cause*, Docket No. 99, as to why the present case should not be dismissed for the reasons stated by the Trustee in his supplement to its motion to dismiss (Docket No. 98).

**2.** The issue before the Court arises through a *Trustee's Motion to Dismiss*, Docket No. 96, whereby the Chapter 13 Trustee moved for the dismissal of the present case on grounds that the Debtor had failed to deliver tax refunds during the life of the Plan. In response to said motion to dismiss (*Debtor's Reply*, Docket No. 97), the Debtor submitted to the Trustee copies of his tax returns and evidenced that he did not receive tax refunds during the life of the Plan and that there were no arrears in the confirmed Plan payments to the Chapter 13 Trustee.

**3.** After reviewing the Debtor's tax returns, the Chapter 13 Trustee sustained and supplemented his request for dismissal for "cause" of the present case, alleging that said tax returns reflected that the Debtor had had an increase in his income for the years 2013, 2014 and 2015, that this information had not been previously disclosed by the Debtor, that the Debtor had acted in "bad faith" by failing to disclose this information and not paying to his creditors the additional disposable income he had earned. *Trustee's Supplement to Motion to Dismiss*, at page 13, paragraph 29, Docket No. 98.

2

4. The Debtor hereby respectfully submits his motion in compliance with *Order to Show Cause* as to why the present case should not be dismissed. The Debtor respectfully alleges that he has acted in "good faith" and that the following circumstances should be taken into consideration in order to determine whether or not a dismissal of the present case is warranted. The Debtor respectfully alleges as follows:

---that although the Debtor's yearly income increased during the years 2013, 2014 and 2015, his basic salary substantially remained the same;

---that the Debtor's salary increases during these years were based on an increase in the amounts received by the Debtor from production or performance bonuses earned by the Debtor during these years;

---that at the 341 meeting the presiding officer from the Trustee's office examined the amount of the bonuses received by the Debtor during the previous years and was satisfied that the Debtor was making his "best effort" by proposing to pay the sum of $7,000.00 per year as additional payments to fund his Chapter 13 Plan;

---that the Debtor was convinced that the amounts he had to pay from income received from the bonuses were those which had been "fixed" at $7,000.00 as proposed in the Debtor's confirmed Chapter 13 Plan;

---that as of the date of filing the present Chapter 13 case, the Debtor had additional income from "family aid" ($700.00) which listed income the Debtor stopped receiving during the life of the Plan;

---that the Debtor's DSO payments were substantially increased during the life of the Plan;

---that other expenses for the maintenance and support of his three (3) children substantially increased during the life of the Plan;

----that the Debtor did not have "disposable income" from which to increase his Plan payments; and

---that the original "means test" filed by the Debtor (See: Docket No. 1) reflected a negative (-$260.80) projected disposable income, in the present case.

## II. COUNTERSTATEMENT OF RELEVANT UNDISPUTED FACTS

5. On May 24, 2013, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. Section 1301 et seq.

6. As of the date of filing the present bankruptcy case (05/24/2013), the Debtor was employed (9 years) as a Q.A. Quality Manager for AMGEN Manufacturing Limited, located at Juncos, Puerto Rico.

7. The Debtor owns a residential real property located at Hacienda Borinquen in Caguas, Puerto Rico. The Debtor pays a monthly mortgage payment to BPPR (previously DORAL Bank) in the sum of $1,493.17. As of 05/24/2013, the Debtor owed $45,564.28 in pre-petition arrears, including costs and expenses (POC #8-1).

8. The Debtor owns and drives a 2006 Honda Ridgeline.

9. As of 05/24/2013, the Debtor was a single parent (divorced) with three (3) children (dependents) ages 16, 14 and 11, making monthly DSO payments for each child of $800.00, $800.00 and $793.00 ($2,393/month), respectively.

10. The Debtor's income sources as of 05/24/2013 were the following:

   ---basic gross salary from AMGEN, at $7,670.00 per month;

   ---VEP or a performance bonus (the March/2013 bonus was for the sum of $18,000.00);

   ---Christmas bonus of $1,571.60/yr. or $131.00 prorated per month; and

   ---an economic contribution from Debtor's family of $700.00 per month.

11. The Debtor's *Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* (Docket No. 01), dated 05/24/2013, reflects a negative "monthly disposable income" of $-260.80.

12. The Debtor's 2012 tax return filed with the Puerto Rico Treasury Department reflects gross income for the year 2012 in the sum of $121,680.00.

13. The Debtor's 2011 tax return filed with the Puerto Rico Treasury Department reflects gross income for the year 2011 in the sum of $112,950.00.

14. The Debtor's 2010 tax return filed with the Puerto Rico Treasury Department reflects gross income for the year 2010 in the sum of $109,784.00.

4

13. At the 341 meeting of creditors held on June 28, 2013, the Trustee/Presiding Officer noted the following:

> "Debtor to specify which months will the periodic payments will be devoted to the plan's funding. Debtor informed that he normally received the payments from the performance bonus in March." _Trustee's 341 Minutes/Trustee's Objection to Confirmation_, at page 3, Docket No. 10.

14. That the Debtor submitted to the Chapter 13 Trustee all pay-stubs concerning the Debtor's income at AMGEN for the commitment period covering the months of November, December/2012, January through April/2013 (including pay-stubs for the 2012 Christmas bonus; 2013 April performance bonus; April 2013 salary pay stubs which reflects a salary increase from $42.68 per hour to $44.26 per hour).

15. That since the year 2014 the Debtor's DSO monthly payments increased from $2,393.00 to $3,010.00 per month (from $1,600 and $793.00 to $1,725 and 1,285.00, per month).

16. That during the life of the Plan, two (2) of Debtor's children became full-time college students. As of the present date, December 06, 2017, the Debtor's children/dependents are now ages 21 and 19 (college students) and 15 (private school student).

### III. LEGAL ARGUMENT
#### A. THE BINDING EFFECT OF A CONFIRMED PLAN

17. In a previous decision, this Honorable Court **emphasized the binding effect of a confirmed plan** provided that due process requirements of reasonable and actual notice were satisfied.

18. In the case of _In re Galindez_, 514 B.R. 79 (Bankruptcy Court D.P.R. 2014), this Honorable Court held that a Chapter 13 Trustee is bound by a confirmed plan and that a confirmation of a chapter 13 plan affords its _res judicata_ effect and therefore prevents re-litigation of matters that either were raised or could have raised prior to confirmation. _In re Galindez_, 514 B.R. 79 (Bankruptcy Court D.P.R. 2014).

5

19. All issues raised by the Chapter 13 Trustee in his supplemental motion to dismiss the present case (Docket No. 98) are issues that were raised or could have been raised prior to confirmation.

20. It is undisputed that the Debtor's income was fully disclosed to the Trustee, including the fact that the Debtor, in addition to his basic salary, received performance bonuses that could not only vary, but were contingent to several factors imposed by the Debtor's employer.

21. It is also undisputed that at the 341 meeting of creditors the presiding officer analyzed the Debtor's performance bonuses and the impact this could have concerning the Debtor's projected disposable income.

22. A recording of the 341 meeting held on 06/28/2013, was recently requested and obtained from the Trustee's Office by the undersigned attorney. The 341 recording reflects that the presiding officer questioned the Debtor concerning the performance bonuses earned by the Debtor. After several questions and answers and having analyzed the aforestated situation, the presiding officer stated for the record that the Trustee's concern with the bonuses was that the Debtor's proposed Plan did not state the exact date/month that the bonus was to be paid-into the Plan.

23. The Debtor understands that the Trustee, prior to confirmation, could have raised several issues concerning the Debtor's performance bonuses. The fact that the performance bonuses were for undetermined amounts could anticipate a question of the reasonableness of the $7,000.00 fixed amount proposed by the Debtor in his Chapter 13 Plan. (*i.e.* a percentage of the performance bonus could have been requested by the Trustee). The Trustee did not request from the Debtor any further information concerning these performance bonuses.

24. Therefore, considering the afore stated circumstances, it is reasonable to assume and conclude that the Debtor understood that his obligation towards the Trustee was to pay what the **confirmed Plan provides**: a $7,000.00 fixed additional payment every year for five (5) years or for the life of the Plan.

25. It is undisputed that the Trustee was given adequate due process to make further inquiry into the Debtor's performance bonuses and to object to the Debtor's Plan concerning the proposed $7,000.00/year additional payment. The Trustee recommended the Debtor's proposed Plan and the same was confirmed.

26. Thus, the Trustee's request to dismiss the present case based on the grounds that the Debtor did not disclose an income increase stemming from an increase in the amount earned by the Debtor in performance bonuses should be denied based upon the binding effect of the confirmed Plan.

**B. THE TRUSTEE'S OBLIGATION TO ASSIST THE DEBTOR IN PERFORMANCE UNDER THE PLAN**

27. Pursuant to Section 1302(b)(4) of the Bankruptcy Code, 11 U.S.C. Section 1302(b)(4), "the Trustee shall - ... assist the debtor in performance under the plan."

28. The Chapter 13 trustee has a statutory duty to advise and assist the debtor in performance under the plan. The trustee has important fiduciary responsibilities to creditors, in addition to advising and assisting the debtor. Lundin, Keith M., *Chapter 13 Bankruptcy*, Section 3.55.

29. In the present case, and during the life of the Plan, the Chapter 13 Trustee did not request from the Debtor a copy of his 2013, 2014 or 2015 tax returns, until month 49 of the 60-month Plan.

30. Thus, the Debtor's misunderstanding concerning the amounts to be paid to the Plan's funding from his earned performance bonuses added to the lack of assistance by the Trustee in the performance of the confirmed Plan, results in the present situation before the Court.

**C. THE LEGAL GROUNDS TO REQUEST A DISMISSAL 11 U.S.C. 1307(c)**

31. Section 1307(c) of the Bankruptcy Code, 11 U.S.C. Section 1307(c), provides a list of reasons as to why a Chapter 13 case may be dismissed.

7

32. However, the list of reasons for dismissal provided for in Section 1307(c) is not exclusive. *In re Gonic Realty Trust*, 909 F.2d 624 (1st Cir. 1990).

33. A dismissal of a Chapter 13 case pursuant to Section 1307(c) for "cause" is discretionary, rather than mandatory. *In re Green*, 64 B.R. 530 (B.A.P. 9th Cir. 1986).

34. Courts have exercised discretion and have denied case dismissals based on a debtor's failure to turn over debtor's husband share of a tax refund, *In re Malewicz*, 457 B.R. 1 (Bankr. E.D. N. Y. 2010); or for debtor's failure to file tax returns after confirmation of chapter 13 plan, In re *Dep't of Treasury v. Galarza Pagan*, 279 B. R.43 (Bankr. D.P.R. 2002).

35. In the case at bar, the reasons for dismissing the present case for "cause" pursuant to the Trustee's request for dismissal do not fall within the list of reasons to dismiss a case under Section 1307(c).

36. Therefore, in order to dismiss the present case the Court, in its discretion, must find that the Debtor's acts are such egregious and that the Debtor has acted in such "bad faith" that there is "cause" to dismiss the case.

37. The Debtor respectfully understands that in the present case there is no "cause" to dismiss the case since the present situation may be reasonably explained as a misunderstanding and a confusion as to the Debtor's obligation under the terms of a confirmed Plan concerning a fully disclosed source of income.

### D. IF DISMISSAL IS NOT A FAIR REMEDY, THE COURT SHOULD EXERCISE ITS DISCRETION TO ORDER SOME OTHER REMEDY

38. The Debtor respectfully submits that the failure to disclose the increase in his yearly bonuses was based on his incorrect understanding that the amount to be paid to the Trustee from this source was the "fixed" sum of $7,000.00 pursuant to the terms of the confirmed Plan. The Debtor has had no intention to deceive or conceal any income to the Court or to the Chapter 13 Trustee.

8

39. Furthermore, the Debtor respectfully alleges that the aforestated income increase received during the years 2013, 2014 and 2015 was used to cover a substantial increase in his DSO payments and to pay for reasonable and necessary expenses for the support and maintenance of his three (3) children, during the life of the Plan.

40. However, the Debtor respectfully understands that he is under the obligation to make his "best effort" to repay his creditors, therefore, the Debtor proposes to cure this matter as follows: the Debtor is proposing a modified Plan, whereby he will immediately increase his monthly payment from $675.00 to $1,350.00 until Plan completion. Furthermore, the Debtor is proposing to pay the sum of $25,000.00, instead of the $7,000.00 for the next and last "additional payment" to fund his Plan. This increase in the Plan base will substantially increase the distribution to the general unsecured creditors in the present case.

### IV. CONCLUSION:

41. Based on the abovestated, the Debtor respectfully requests that this Honorable Court grant the present motion in compliance with this Court's *Order to Show Cause*, allow the Debtor to modify his Chapter 13 Plan in order to increase the Plan base for the benefit of the general unsecured creditors and allow the Debtor to continue under the protection of the Court by denying the Trustee's motion for dismissal in the present case.

**WHEREFORE** the Debtor respectfully prays that this Honorable Court grant the present motion in compliance with this Court's Order to Show Cause, allow the Debtor to modify his Chapter 13 Plan to increase the Plan base for the benefit of the general unsecured creditors and allow the Debtor to continue under the protection of the Court by denying the Trustee's motion for dismissal in the present case.

**I HEREBY CERTIFY** that on this same date a copy of this notice was sent via electronically with the Clerk of the Court using CM/ECF systems which will send notifications of such to the Chapter 13 Trustee Alejandro Oliveras Rivera, Esq.; the US Trustee's Office, and to all other CM/ECF participants; I also certify that I have mailed by

9

United States Postal Service copy of this motion to the following CM/ECF non-participants: Debtor, Luis Adrian Acevedo Figueroa, 3788 Richmond Ave Apt 1371 Houston TX 77046, in the above captioned case.

**RESPECTFULLY SUBMITTED**. In San Juan, Puerto Rico, this 06th day of December, 2017.

/s/*Roberto Figueroa Carrasquillo*
USDC #203614
RFIGUEROA CARRASQUILLO LAW OFFICE PSC
Attorney for the Debtor
PO BOX 186 CAGUAS PR 00726-0816
TEL 787-744-7699 FAX 787-746-5294
EMAIL: rfigueroa@rfclawpr.com